IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RYAN DAVID BURKE, <br><br> Petitioner, <br><br> v. <br><br> ALFRED BIGELOW, <br><br> Respondent. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS** <br><br> Case No. 2:16-cv-285-RJS <br><br> District Judge Robert J. Shelby |

THIS MATTER IS BEFORE THE COURT on Respondent's motion to dismiss Petitioner Ryan Burke's habeas petition as untimely. Having carefully considered the motion, the opposition, the reply, and all relevant rules and statutes, the Court concludes that Petitioner's habeas petition is time-barred under the federal period of limitation.

## BACKGROUND

### A. Factual Summary[1]

Petitioner stayed overnight at the home of an acquaintance (A), while A was absent. However, A's sister was there babysitting A's four-year-old daughter (B). Petitioner stayed in the basement, ordering pornographic movies on cable television at 1:30, 3:00, 3:30, and 8:20 a.m., respectively. They were "on demand" movies and could therefore be fast-forwarded.

---

[1] The factual summary is taken from the Utah Court of Appeals' decision in *Burke v. State*, 2015 UT App 1, 342 P.3d 299, 301-03, 306-07.

B awakened during the night and went downstairs. She recounted to police that Petitioner had been watching a "grownup movie"; the movie included oral sex scenes; Petitioner forced her to touch his penis; and it was night outside when he did so. While she also described what may have been a scene in one of the movies--that she saw a ball drop on a person's head--she never explicitly tied the time of her abuse to any particular scene or movie. At trial, the police investigator testified that the fourth movie (ordered at 8:20 a.m.) had a scene with a man being struck on the head with a cane.

Later that morning, Petitioner was told to leave. He took A's checkbook, drove to a store and cashed three of the checks. The first check was time-stamped at 9:18 a.m.

### B.  Procedural History

A jury convicted Petitioner of aggravated sexual abuse of a child, forcible sexual abuse, and dealing in material harmful to a minor. *See State v. Burke (Burke I)*, 2011 UT App 168, 256 P.3d 1102, 1111; *Burke (Burke II)*, 342 P.3d at 301. The Utah Court of Appeals affirmed his convictions. *Burke I*, 256 P.3d at 1130. The Utah Supreme Court denied certiorari review on September 28, 2011. *See State v. Burke*, 263 P.3d 390 (Utah 2011). Petitioner did not petition the United States Supreme Court.

On September 4, 2012, Petitioner timely filed a state post-conviction petition. The district court concluded Petitioner was denied effective assistance of counsel and vacated his convictions. The Utah Court of Appeals reversed, holding the "district court erred in determining

that counsel's performance was objectively deficient and that Petitioner received ineffective assistance of counsel." *Burke II*, 342 P.3d at 307, *cert. denied*, 352 P.3d 106 (Utah 2015).

On April 8, 2016, Petitioner filed his current habeas petition.

## ANALYSIS

### A. Period of Limitation

Federal law puts a one-year limitation period on filing of a habeas-corpus petition. 28 U.S.C.S. § 2244(d)(1) (2017). The period begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id*. A state judgment becomes final when the United States Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003); *Locke v. Saffle*, 237 F.3d 1269, 1271-72 (10th Cir. 2001).

"The one-year period of limitation for filing a federal habeas petition is tolled or suspended during the pendency of a state application for post-conviction relief properly filed during the limitations period." *May v. Workman*, 339 F.3d 1236, 1237 (10th Cir. 2003) (citing 28 U.S.C.S. § 2244(d)(2) (2017)). A "state postconviction application 'remains pending' 'until the application has achieved final resolution through the State's postconviction procedures.'" *Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (quoting *Carey v. Saffold,* 536 U.S. 214, 220 (2002)); *see also Fisher v. Raemisch*, 762 F.3d 1030, 1032 (10th Cir. 2014). Once the post-conviction case ends in state court, the one-year limitation period begins to run again.

3

Tolling, however, does not revive the limitations period--i.e., restart the clock at zero. It serves only to suspend a clock that has not already run. *See Fisher v. Gibson*, 262 F.3d 1135, 1142-43 (10th Cir. 2001); *see also Laws v. LaMarque*, 351 F.3d 919, 922 (9th Cir. 2003). Thus, any time between when a petitioner's direct appeal becomes final and when he files his petition for state post-conviction relief is counted in the limitations period. Moreover, any time between when the state post-conviction action concludes and before a petitioner's habeas petition is filed also counts toward the limitations period because state-collateral review only pauses the one-year period; it does not delay its start. *See McMonagle v. Meyer*, 766 F.3d 1151, 1159 (9th Cir. 2014) (J. Rawlinson, dissenting) ("Although filing of collateral proceedings may toll the running of the limitations period, it does not affect commencement of the running of the limitations period.").

In other words, time elapsing after a petitioner's conviction becomes final on direct review, but before a state post-conviction petition is filed, and time after final disposition of the petitioner's post-conviction proceedings, but before the filing of the federal habeas petition, *aggregate* to count against the one-year-limitation period. *See Sutton v. Cain*, 722 F.3d 312, 316 n.6 (5th Cir. 2013) ("To calculate when the limitations period has run, we aggregate the time between (i) the date the petitioner's conviction became 'final' and the date the petitioner filed his state [post-conviction] application; and (ii) the date the state [post-conviction] process concluded and the date the petitioner filed his federal habeas petition.").

Petitioner was convicted in 2008. The Utah Court of Appeals affirmed his convictions, *Burke I*, 256 P.3d at 1108, and the Utah Supreme Court denied certiorari on September 28, 2011. *See* 263 P.3d 390. Petitioner then had ninety days to seek certiorari review from the United

4

States Supreme Court, s*ee* Sup. Ct. R. 13.1, but did not. Thus, Petitioner's judgment of conviction became final--and the limitation period began to run--on December 28, 2011. *See Clay*, 537 U.S. at 527. After 251 days of the limitations period had expired, on September 4, 2012, Petitioner properly filed a state post-conviction petition, tolling the running of the limitation period. *See* 28 U.S.C.S. § 2244(d)(2) (2017).

The state district court granted post-conviction relief and vacated Petitioner's convictions. *See Burke II*, 342 P.3d at 304. The Utah Court of Appeals reversed. *Burke II*, 342 P.3d at 307. The Utah Supreme Court denied certiorari review on May 13, 2015. *See* 352 P.3d 106. The denial ended Petitioner's state post-conviction action and tolling of the limitation period. But because only 114 days of the period remained, Petitioner had until just September 4, 2015 to timely file his petition. He did not file it until April 8, 2016--over seven months too late.

## B.  Exceptions

Petitioner urges his petition was timely filed because the federal limitation period did not begin to run when his conviction was final on December 28, 2011, but on August 20, 2012, when he discovered the factual predicate for his habeas claim--i.e., counsel's failure to investigate an alleged alibi. He thus argues that his habeas petition was due on April 29, 2016, not September 4, 2015, as Respondent argues. Because he filed his petition on April 8, 2016, he contends that his petition is timely. Alternatively, Petitioner contends that even if his petition is not timely, he nevertheless meets the miscarriage-of-justice exception to the limitation period because he has a potential alibi defense showing actual innocence.

5

### 1. Due Diligence

Again, the one-year period runs from the latest of four possible dates, one being "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C.S. § 2244(d)(1)(D) (2017). The Tenth Circuit defines "'due diligence' as an 'objective standard' that refers to when a plaintiff 'could have' discovered the pertinent facts, not when she actually discovered them." *Madrid v. Wilson*, 590 F. App'x 773, 776 (10th Cir. 2014) (quoting *United States v. Denny*, 694 F.3d 1185, 1189 (10th Cir. 2012)). Because "'due diligence is equivalent to a rule of inquiry notice,' the prisoner is obligated to make reasonable efforts to discover the facts relevant to his claim for habeas corpus relief." *Nordelo v. Sec'y, Fla. Dep't of Corr.*, 635 F. App'x 636, 639 (*11th Cir. 2015*) (citation omitted). Thus, the "question under the provision is not when prisoners first learned of the new evidence; it is when they *should* have learned of the new evidence had they exercised reasonable care." *Townsend v. Lafler*, 99 F. App'x 606, 608 (6th Cir. 2004) (emphasis added).

Petitioner asserts he "had no reason to know that his counsel had failed to investigate his alibi defense until his trial counsel admitted his failures on August 20, 2012." But he does not explain what his reasonable efforts were to discover these facts and why those efforts could not have alerted him sooner to counsel's alleged failures. This is fatal to his argument, because he is the one who bears "the burden of persuading the court that he has exercised due diligence in his search for the factual predicate of his claim." *Stokes v. Leonard*, 36 F. App'x 801, 804 (6th Cir. 2002). For this reason alone Petitioner has not shown that the limitation period began to run only in August 2012, rather than when his direct appeal became final in December 2011.

In any event, Petitioner had reason to know that counsel did not investigate his alibi. In their initial meetings, Petitioner told his trial attorney that he was not at B's home in early morning during the sexual offenses because he was out forging checks. He told counsel to get time stamps on forged checks and surveillance footage because these would give a defense. Petitioner knew at trial that his attorney presented no time-stamp evidence, no surveillance footage, and no alibi defense. He was therefore on inquiry notice at least as early as his trial's end in October 2008 that his attorney may not have investigated alibi. Exercising due diligence, he could have easily discovered at that time--years before August 2012--that counsel did not investigate an alibi defense. *See Ford v. Gonzalez*, 683 F.3d 1230, 1236 (9th Cir. 2012) (stating trial testimony "gave ample reason for a reasonable person" in petitioner's circumstances to investigate facts underlying his habeas claim).

And even assuming that Petitioner could not discover this until after his direct appeal was final and he hired new attorneys, he got an initial affidavit from trial counsel for state post-conviction purposes on October 6, 2011. He could have asked counsel at that point whether counsel investigated his alibi as Petitioner had requested. Moreover, as early as February 9, 2012, Petitioner's post-conviction attorneys were investigating a potential alibi defense. *See* Docket Entry # 11, Exh. C, Aff. of Rhondda Cannon at 2 ("On or about February 9, 2012, [the affiant] received a phone message from [post-conviction counsel] regarding a check that was negotiated at Dan's Foods in 2007."). Again, knowing that he had asked counsel to investigate his alibi, but that no alibi defense was presented at trial, Petitioner could have asked trial counsel on February 9, 2012, whether he had investigated an alibi.

7

But even assuming that the limitation period did not start going until February 9, 2012--rather than on December 28, 2011, when his direct appeal became final--Petitioner's habeas petition is still untimely. From February 9, 2012 to September 4, 2012, the day Petitioner filed his state post-conviction petition, 208 days of the limitation period expired. When the period began to run again on May 13, 2015, when his state post-conviction proceedings ended, he had 157 days--until October 17, 2015, to timely file his habeas petition. He did not file it until April 8, 2016, 174 days--almost six months--too late. Petitioner has therefore not shown that his habeas petition was timely filed.

## 2. Actual Innocence

Alternatively, Petitioner argues that he met the miscarriage-of-justice exception to the period of limitation because his alleged alibi shows he is actually innocent. To convincingly show actual innocence, Petitioner "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). In determining whether Petitioner has made the requisite showing, the Court "must consider 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" *Id.* at 538 (quoting *Schlup*, 513 U.S. at 327-28). And, as the Supreme Court has noted, while the burden of proof on the petitioner is one of "more likely than not," the actual innocence "standard is demanding and permits review only in the 'extraordinary' case." *Id.* (quoting *Schlup*, 513 U.S. at 327). Petitioner does not carry his burden to show that he is actually innocent.

8

Petitioner asserts that the new evidence he proffered in state post-conviction proceedings puts him miles away from A's house during the offenses. According to him, B stated in a pretrial interview that she saw a movie with Petitioner showing "a ball or object dropping on a man's head." *Id.* at 25. Petitioner ordered four pornographic movies on the night of the abuse, and the fourth movie had a scene with a man struck in the head with a cane. *See Burke II*, 342 P.3d at 302. Petitioner argues that the sexual abuse could have occurred *only* during this movie scene.

Petitioner ordered that movie at 8:20 a.m. Based his state post-conviction counsels' review of the movie, Petitioner asserts the specific scene B saw "occurred at 34 minutes 7 seconds into the film. If the movie started immediately when ordered, [B] saw the pornographic scene at 8:54 a.m. (at the earliest)." Petitioner further asserts that, after he left the house, he forged three checks at a store, with the first forgery occurring at 9:18 a.m. But for him to have forged a check at that time, he argues that he must have left A's house no later than 8:47 or 8:50 a.m., depending on the route taken. He based this conclusion on a hired traffic engineer's determination that it would take a minimum of twenty-seven minutes to get from A's house to the store. Because he must have been out of the house before the movie scene at 8:54 a.m. played, Petitioner argues that he had a potential alibi to the offenses. Petitioner is incorrect.

First, "[t]o be successful, a defendant's alibi must cover the entire time when the defendant's presence would have been required for the" crime's accomplishment. 21 Am. Jur. 2d Criminal Law § 181. And because "an alibi defense derives its potency from the physical impossibility of the accused's guilt, a purported alibi that leaves it possible for the accused to be

9

the guilty person is no alibi at all." *Id.* Here, Petitioner's purported alibi is "no alibi at all" because it does not cover the entire time of the sexual offense.

As the Utah Court of Appeals recognized, the trial evidence presented showed that Petitioner was dropped off at A's house early the morning of September 16, 2007, and was told he could sleep on the basement couch. *See Burke II*, 342 P.3d at 301. While there, he ordered four pornographic movies--at 1:30, 3:00, 3:30, and 8:20 a.m. *Id.* at 301, 303. B awakened during the night and went downstairs. *Id.* at 301. "She recounted that Petitioner was watching 'a grownup movie' that included oral sex scenes. During one of the movies, Petitioner held [her] hand and forced her to touch his penis." *Id.*

Given the movies' timing and B's statement that she was abused while oral-sex scenes were on--which applied to all the movies Petitioner ordered--"the possible alibi could only have exonerated Petitioner for acts committed after 8:20 a.m. at the earliest, *leaving a more-than-six-hour window for Petitioner to have committed the sexual offenses*." *Id.* at 305 (emphasis added); *see also id.* at 307 (stating Petitioner's potential alibi covered "only a fraction of the relevant time period" when the abuse could have occurred). And the trial evidence strongly suggested that the abuse, in fact, occurred *before* 8:20 a.m. The court of appeals noted that evidence was presented that (1) "the sun had risen at 7:09 a.m. that day," (2) B "had stated at her pretrial interview that the abuse had occurred while it was still night outside," (3) B "did not claim to have been abused during any particular scene" in a movie, and (4) her "pretrial interview did not expressly tie the time of her abuse to any particular scene or movie." *Id.* at 306 & n.10.

Because Petitioner's alleged alibi did not "cover the entire time when [his] presence would have been required for the accomplishment of the crime" and left "it possible for [him] to be the guilty person," it "is no alibi at all." 21 Am. Jur. 2d Criminal Law § 181. Thus, Petitioner has no basis to argue that he is actually innocent. He therefore has not satisfied the miscarriage-of-justice exception to the AEDPA's statute of limitations.

Second, even assuming that Petitioner had a potential alibi defense, he has not shown that, if presented at trial, no reasonable juror would find him guilty beyond a reasonable doubt. *See Bell*, 547 U.S. at 536-37. To make this showing, he must establish that it would be unreasonable for any juror not to accept his view of the evidentiary underpinnings of his alleged alibi. But as the Utah Court of Appeals noted in its decision, Petitioner would face significant obstacles in presenting a believable alibi defense at a trial. *See Burke II*, 342 P.3d at 307.

For example, in B's pretrial police interview, she said she saw a ball drop on a man's head. For Petitioner's alibi to have traction, he would need to convince jurors that B's statement could refer only to the scene in the fourth movie "in which a man was hit on the head with 'a bamboo stick or a cane.'" *Id.* But a reasonable juror could conclude that a ball--a round object--dropping on a man's head could not possibly refer to a movie scene where a man is hit in the head with a stick or cane--a long, straight object. In addition, Petitioner would have to present convincing evidence that the sexual abuse occurred only during the movie scene when a man is hit on the head with a cane. But because B "did not link the time of the abuse to any particular scene in any of the movies," *id.*, a reasonable juror could conclude that the abuse could have occurred earlier in the morning while a different pornographic movie was playing.

11

Next, Petitioner would have to argue that the fourth movie was not fast-forwarded. But again, because "a cable company representative testified that the movie could be fast-forwarded," *id.*, reasonable jurors could disagree with Petitioner and conclude that the movie scene where a man was hit on the head with a cane played earlier than 8:54 a.m. because it was fast-forwarded. Finally, Petitioner would have to convince jurors that he could not possibly have reached the store in time to forge a check at 9:18 a.m. if he left A's home after 8:47 a.m. But, as the court of appeals pointed out, while the shortest drive time recorded by Petitioner's traffic engineer was twenty-seven minutes and forty-three seconds, "the engineer's calculations assumed that Petitioner [drove] no faster than the posted speed limits, that Petitioner spent one minute walking to his car, that Petitioner stopped at an intermediate gas station for five-and-a-half minutes, and that Petitioner took three-and-three-quarter minutes to make his purchase at the grocery store." *Id.* Again, while jurors could agree with Petitioner on when he left A's house, jurors looking at these facts could also reasonably disagree and conclude that Petitioner left later and still had time to forge the check at 9:18 a.m.

Because reasonable jurors could disagree with Petitioner's evidentiary view that he contends establishes an alibi defense, he has not shown that no reasonable juror would find him guilty beyond a reasonable doubt. Accordingly, he has not shown that he is actually innocent nor, therefore, that he may use the miscarriage-of-justice exception to the federal period of limitation. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1935 (2013) ("To invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner 'must show that it is more

likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" (quoting *Schlup*, 513 U.S., at 327)).

## CONCLUSION

Petitioner's habeas petition was filed over seven months after it was due. And because he has not shown that he exercised due diligence in his search for the factual predicate of his habeas claim, he has not rebutted Respondent's time-bar defense. Finally, Petitioner has not made a convincing showing of actual innocence that would excuse the untimeliness of his petition. Accordingly, the Court concludes that dismissal of Petitioner's habeas petition is warranted.

## ORDER

**IT IS HEREBY ORDERED** that Respondent's motion to dismiss is **GRANTED**. (*See* Docket Entry # 9.) The petition is **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Petitioner's motion to strike is **DENIED**, (*see* Docket Entry # 13), and Petitioner's motion to respond is **GRANTED**, (*see* Docket Entry # 16).

This case is **CLOSED**.

DATED September 18, 2017.

BY THE COURT

JUDGE ROBERT J. SHELBY
United States District Court